IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERRELL PANKEY and                                                      PLAINTIFFS
SMITH COUNTY STONE, LLC

vs.                              Civil No. 4:13-cv-04046

WESTERN ARKANSAS ROCK, INC.,
AMELIA MINERALS, LLC,
DAVID POTTER, LARRY DUFFIELD,
LUKE B. DUFFIELD, RANDY DUFFIELD, and
MABLE EARNESTINE DUFFIELD
*as Administratrix of the Estate of Billy Joe Duffield, Deceased*        DEFENDANTS

**REPORT AND RECOMMENDATION**
**OF A UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Motion of Defendants Western Arkansas Rock, Inc. ("WAR") and

David J. Potter (collectively, "Separate Defendants") for Summary Judgment. ECF No. 81. This

Motion was filed on October 3, 2014. *Id.* On October 10, 2014, Plaintiffs responded. ECF No. 85.

On October 14, 2014, Separate Defendants replied. ECF No. 88. This Motion was referred to the

undersigned for a report and recommendation, and this Motion is now ripe for consideration.

**I.     Background:**

On May 6, 2013, Plaintiffs[1] filed their Complaint in this action. ECF No. 1. In this

Complaint, Plaintiffs raise three causes of action against Separate Defendants: (A) breach of

contract; (B) interference with business relations; and (C) conspiracy. *Id.* Plaintiffs also seek a

---

[1] There are two Plaintiffs, Smith County Stone, LLC ("SCS") and Terrell Pankey. ECF No. 1 ¶¶ 1-2. Terrell Pankey is the sole managing member of SCS. *Id.* Plaintiffs refer to themselves collectively in their briefing. ECF No. 85. Thus, the Court will refer to them collectively throughout this report and recommendation.

1

declaratory judgment reinstating their contract with Separate Defendants.  ECF No. 1 ¶¶ 23-25.

Plaintiffs claim David Potter is liable under the alter ego theory for the wrongful conduct of WAR.

*Id.* ¶ 43.  Plaintiffs have requested damages for loss of rock inventory, lost profits, loss of property,

and emotional distress.  *Id.* ¶¶ 58-66.  Plaintiffs have also requested punitive damages.  *Id.*

### A.    Mining Lease: 2008

This case arises out of a contract dispute.  ECF No. 1.  On March 6, 2008, SCS entered into

a contract with WAR wherein WAR leased parcels of land in Sevier County, Arkansas to SCS for

the purposes of mining, grading, stockpiling, loading, and removing rock from a rock quarry known

as the HMB Quarry.  *Id.*  ¶¶ 14-15.  The contract was entitled the "Mining Lease."  *Id.*

The Mining Lease had a five (5) year term beginning on March 4, 2008 and ending on

February 28, 2013.  ECF No. 1-1 ¶ 7(a).  The Mining Lease provided for a $5,000.00 advance royalty

payment to WAR and production royalties based upon the tonnage mined and removed from the

HMB Quarry.  *Id.* ¶ 8(a).  Regardless of production, the minimum annual royalty payment was

$30,000.00.  *Id.*

In the Mining Lease, there was a ten (10) day "cure period."  ECF No. 1-1 ¶ 29(a).  It

provided the following:

> If SMITH COUNTY STONE shall default in any payment of royalty to Western
> Arkansas Rock, Inc., or if SMITH COUNTY STONE shall fail to comply with any
> of the covenants and agreements contained in this lease, and such default or
> noncompliance shall continue for a period of ten (10) days after written notice thereof
> shall have been given Western Arkansas Rock, Inc. to SMITH COUNTY STONE,
> then Western Arkansas Rock, Inc. shall have the right at any time after said (10) day
> period to terminate this lease by written notice to that effect to SMITH COUNTY
> STONE, and all rights of SMITH COUNTY STONE hereunder shall thereupon
> terminate.  In the event of such termination, Western Arkansas Rock, Inc. shall retain
> the advance royalty.

*Id.*  As noted in this provision, any time after the expiration of this ten (10) day period, WAR could

2

terminate its contract with SCS. *Id.*

### B.    Plaintiffs' Attempts to Sell: 2009 to 2010

From approximately October 2009 through approximately March 2010, Plaintiffs attempted to sell their interests under the Mining Lease to the Duffields. ECF No. 75-1 at 21-23 (Letter to Travis Berry as attorney for Plaintiffs); ECF No. 77-1 at 2, 12:1-22 (original). The Duffields were interested in obtaining Plaintiffs' lease in the HMB Quarry because they owned the land adjacent to the HMB Quarry. ECF No. 75-1 at 10, 33:14-20 (original). As Larry Duffield testified during his deposition, they wanted "to put it [the land] all together." *Id.*

An agreement was never reached. Travis Berry, Plaintiffs' attorney, testified at his deposition on September 3, 2014 regarding this issue. Mr. Berry testified an agreement could not be reached between Plaintiffs and the Duffields because there were too many liens and judgments against SCS. ECF No. 77-1 at 8, 56:4-17 (original). Even if the Duffields bought Plaintiffs' interest in the Mining Lease, that money would have to go to Plaintiffs' creditors: "it's not going to result in Terrell getting a bunch of cash, it's going to result in some of his creditors being paid." *Id.* at 9, 57:21-23 (original). Because of these issues, the Duffields backed out of the proposed deal. *Id.* As Larry Duffield testified during his deposition on May 19, 2014: "I would say that [the existence of liens] was a very big stumbling block. Prices and liens and the whole thing, just was more than we wanted to get into with them." ECF No. 71-1 at 5, 45:18-20 (original).

### C.    Mining Lease Termination, New Lease to Amelia: 2010

Thereafter, on August 27, 2010, WAR terminated its lease with SCS. ECF No. 1 ¶ 20; ECF No. 83-6. In its "Notice of Termination of Lease," WAR provided SCS with six reasons for the termination. ECF No. 83-6.

These reasons were the following:

1.  SCS failed "to submit a written Mining Plan for approval, and to otherwise adhere to the provisions of Paragraph 5";

2.  SCS failed "to provide an accounting of production as provided in Para. 9, beginning March, 2008 through December, 2008, notwithstanding repeated requests for production of weight tickets, invoices and other supporting data to reflect production and sales";

3.  "Para. 10 has been violated by Lessee and Lessee has not produced the Record Books, notwithstanding requests by Lessor to do so";

4.  "The quarry has not been operated in a manner that results in Maximum Utilization of the Quarry.  There has been no production in the quarry during June, July and August, and the equipment for production is wholly inadequate to attain maximum utilization of production. Therefore, notice is hereby given that operations shall cease immediately upon the expiration of 10 days under the terms of Paragraph 12, if not sooner";

5.  "Violation of Paragraph 18; Paragraph 18 requires Lessee to keep the leased premises free and clear of all liens and encumbrances.  Adelita Construction, Inc. has filed a lien and after repeated demands of both Smith County Stone, Inc., Adelita and their attorneys, the cloud of an asserted lien has not been removed in violation of Paragraph 18 of the Mining Lease"; and

6.  "A lawsuit has been instituted against WAR by Adelita Construction, Inc. against WAR by Adelita Construction, Inc. against Smith County Stone, LLC and WAR.  Under Para. 24, Smith County Stone, LLC is required to pay in cash, all reasonable expense, including attorney's fees incurred by Western Arkansas Rock, Inc.  Demand has been made for a $5000 retainer, but only $2,500 has been paid.  That amount has been expended and a demand has been made for additional funds for the Attorney for WAR.  Such funds have not been paid in violation of Para. 24."

ECF No. 83-6.

Less than two months later, on October 1, 2010, WAR entered into a new lease with Amelia Minerals, LLC ("Amelia") which permitted Amelia the exclusive right to use the HMB Quarry.  ECF No. 75-1.

With the current Motion, Separate Defendants claim Plaintiffs can provide no evidence demonstrating a genuine issue of material fact as to any of the three causes of action listed above.

4

ECF No. 81.  Thus, Separate Defendants claim the case against should be dismissed in its entirety.

*Id.*  In response, Plaintiffs claim there are triable fact issues as to each of their causes of action, and

they argue against dismissal.  ECF No. 85.  The Court will now consider this Motion.

**2.      Applicable Law:**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a federal court is authorized to

grant summary judgment in a case.  Summary judgment is appropriate when the record, viewed in

the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV.

P. 56(c)(2).  A genuine issue of material fact exists only if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

248 (1986).

The moving party bears the initial burden of showing that no genuine issue of material fact

exists.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving

party to show through specific evidence that a triable issue of fact remains on an issue where the

nonmovant bears the burden of proof at trial.  *Id.* at 324.  A mere scintilla of evidence in support of

the non-movant's position is insufficient.  *Anderson,* 477 U.S. at 252.

To survive a motion for summary judgment, "a nonmovant must present more than a scintilla

of evidence and must advance specific facts to create a genuine issue of material fact for trial."

*Parks v. City of Horseshoe Bend, Arkansas,* 480 F.3d 837, 839 (8th Cir. 2007) (citation omitted).

As stated in this rule, "[w]hen a motion for summary judgment is properly made and supported, an

opposing party may not rely merely on allegations or denials in its own pleading; rather, its response

must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine

5

issue for trial."  *Id.*

3.    **Discussion:**

In their Complaint, Plaintiffs raise three causes of action against Separate Defendants: (A) breach of contract; (B) interference with business relations; and (C) conspiracy.  Plaintiffs request punitive damages.  *Id.*  Plaintiffs also request David Potter be held personally liable for the wrongful conduct of WAR under the alter ego theory.  *Id.*  The Court will address each of these causes of action and will then address punitive damages and alter ego liability.

A.    **Breach of Contract**

Plaintiffs allege Separate Defendants are liable for breach of contract.  ECF No. 1 ¶¶ 14-22. Plaintiffs have demonstrated they entered into the Mining Lease with WAR.  ECF No. 1-1.  The Mining Lease had a five (5) year term beginning on March 4, 2008 and ending on February 28, 2013. ECF No. 1-1 ¶ 7(a).  Plaintiffs have also demonstrated the Mining Lease could only be terminated by written notice after a ten-day "cure period."  ECF No. 1-1 ¶ 29(a).

Plaintiffs have demonstrated WAR did not follow the two-step written notice requirement from Paragraph 29(a).  This provision requires *two* written notices, notice of noncompliance with ten days to cure, and notice of cancellation following the ten day cure period. ECF No. 1-1 ¶ 29(a). Instead, WAR sent one "Termination Notice of Mining Lease" dated August 27, 2010.  ECF No. 83-6.  Separate Defendants did not address the issue of failure to give notice of noncompliance in its motion or reply.  ECF Nos. 81, 82, 88. Viewing facts in a light most favorable to Plaintiffs, there is a fact issue as to whether this action was in breach of the contract between Plaintiffs and WAR. Accordingly, the Court should **DENY** Separate Defendants' Motion for Summary Judgment on Plaintiffs' breach of contract claim.

###### B.      Interference with Business Relations

Plaintiffs claim David Potter is personally liable to them under the theory of tortious interference with a contract or business expectancy. ECF No. 1 ¶¶ 37-41. With this claim, Plaintiffs argue David Potter is liable for tortiously interfering with their potential contract with the Duffields. *Id.* Plaintiffs argue negotiations were ongoing with the Duffields in 2009 and 2010 to sell their interest in the HMB Quarry, and David Potter caused those negotiations to fail. *Id.* Plaintiffs argue David Potter is liable to them for those negotiations failing. *Id.*

To establish a claim for tortious interference with a contract or business expectancy in Arkansas, a plaintiff must establish four elements: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Overturff v. Read,* 2014 Ark. App. 473, at 9, 442 S.W.3d 862, 867 (2014).

In the present action, the Court finds no evidence Plaintiffs had a "valid contractual relationship or business expectancy" with the Duffields. To satisfy this element, Plaintiffs must provide evidence of a contract or agreement that is "sufficiently concrete in order to qualify as a business expectancy and survival summary dismissal." *See Overturff,* 2014 Ark. App. at 9, 442 S.W. 3d at 867. In this case, Plaintiffs have provided no such evidence. At best, Plaintiffs have provided evidence of a failed negotiation between Plaintiffs and the Duffields that failed because of Plaintiff's financial conditions. *See* ECF No. 77-1 at 8, 56:4-17 (original). Because Plaintiffs have not presented the existence of a fact issue on this element, summary judgment should be **GRANTED**

7

as to the tortious interference claim against David Potter.

### C.    Civil Conspiracy

In their Complaint, Plaintiffs alleged "Conspiracy to Interfere with Contract and Business Relations" as Count 5 against Separate Defendants.  ECF No. 1 at 8.  In their Motion, Separate Defendants moved for summary judgment on this count and supplied evidentiary support.  ECF No. 81.  In their  response, Plaintiffs did not supply any evidence or argument to contradict the claims of Separate Defendants.  ECF No. 85.  Accordingly, the Court finds summary judgment should be **GRANTED** in favor of Separate Defendants on this cause of action.

### D.    Punitive Damages

Plaintiffs claim Separate Defendants are liable for punitive damages.  ECF No. 1 ¶ 65.  To be liable for punitive damages, Plaintiffs must demonstrate either: (1) "The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred;" or (2) "The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage." ARK. CODE ANN. § 16-55-206 (2009).

In the present action, Plaintiffs have made neither showing.  ECF No. 85.  Indeed, Plaintiff did not even argue in their briefing that either standard had been met.  Accordingly, Separate Defendants' request for summary judgment on the issue of punitive damages should be **GRANTED.**

### E.    Alter Ego Liability

Plaintiffs claim David Potter is personally liable for the wrongful conduct of WAR under the theory of alter ego liability.  ECF No. 1 ¶ 43.  Separate Defendants claim David Potter is not

personally liable under the theory of alter ego.  ECF No. 82 at 5-6.  Specifically, they allege "WAR was a duly existing Arkansas Corporation, in good standing with the state of Arkansas, has observed all formalities of the corporate structure, including annual meetings, annual filings of franchise tax reports and annual filing of both state and federal income taxes."  *Id.*  In support of their claim that the alter ego theory does not apply, Separate Defendants have provided the affidavit of David Potter and the corporate records of WAR (which include tax returns and other corporate documents).  ECF Nos. 83-1 and 83-14.

In response to Separate Defendants' Motion, Plaintiffs referenced no evidence but merely claims WAR is "owned by Potter, the business activities of WAR are conducted solely by Potter, wherever he may be located at the time, including his law office in Texarkana, Texas."  ECF No. 85 at 2.  Plaintiffs also claim the "evidence in this case shows that no individual other than Potter has been responsible for any decisions and actions taken by WAR."  *Id.*  Plaintiff thus claims David Potter should be personally liable for the wrongdoing of WAR.  *Id.*

The Court finds Plaintiffs have simply not provided any evidence demonstrating David Potter should be liable for the wrongdoing of WAR under the theory of alter ego.  The alter ego theory is applied in situations where the "corporate structure" has "no substantive effect."  *See, e.g., Horton Dairy, Inc. v. U.S.,* 986 F.2d 286, 290 (8th Cir. 1993) (Arkansas).  Here, Separate Defendants have provided support for their claim that WAR was separate from David Potter and that corporate formalities were followed.  ECF Nos. 83-1 and 83-14.  Plaintiffs have provided nothing to contradict that claim.  Accordingly, the Court finds Separate Defendants' request for summary judgment as to the theory of alter ego liability should be **GRANTED.**

**4.    Conclusion:**

Consistent with the foregoing reasons, the Court recommends Separate Defendants' Motion

for Summary Judgment (ECF No. 81) be **GRANTED IN PART** and **DENIED IN PART**.  The only remaining claims are Plaintiffs' breach of contract claim against WAR and WAR's counter-claim against Plaintiffs.  David Potter should be dismissed from this case.

**The Parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The Parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).**

**ENTERED this 28th day of January 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE